## The Inhabitants of GREAT BARRINGTON *versus* THE COUNTY COMMISSIONERS OF BERKSHIRE.

Under *St.* 1830, *c.* 151, subjecting to taxation " shares or property in any incorporated company for a bridge, or a turnpike road," a citizen of this State is liable to be taxed for his stock in a turnpike company of another State. (See Revised Stat *c.* 7, § 4.)

PETITION for certiorari. Samuel Rosseter, of Great Barrington, having been taxed in 1833, by the assessors of that town, for stock owned by him in the Columbia Turnpike Corporation in the State of New York, the county commissioners, upon his application, ordered the tax to be abated ; whereupon the town presented this petition, alleging that the abatement was illegal. The road runs from the city of Hudson to the boundary line of Massachusetts. The turnpike corporation own the land under their road. Their capital stock and other property has been taxed annually by the State of New York.

*Hubbard* and *Bishop*, for the petitioners, cited *St.* 1830, *c.* 151, § 2 ; Story on Conflict of Laws, 308, 312 ; *Salem Iron Factory Co.* v. *Danvers*, 10 Mass. R. 514 ; *Amesbury W. and C. Man. Co.* v. *Amesbury*, 17 Mass. R. 461.

*Whiting*, *Dwight* and *Sumner*, *contrà*, cited 1 Kent's Comm. (1st edit.) 399 ; Constitution, *c.* 1, § 1, *art.* 4 ; Story, Conflict of Laws, 7, 21, 24, 30, 95, 314, 315, 348, 450 ; *St.* 1829, *c.* 143, § 1 ; *Spear* v. *Bicknell*, 5 Mass. R. 129 ; 1 Revised Stat. of New York, *c.* 13, *p.* 387, 416.

*Per Curiam:* All the exceptions to the proceedings of the county commissioners are now waived, except that which raises the question on the merits, namely, whether a citizen of this Commonwealth, holding stock in a turn-pike company of another State, is liable to be taxed for such stock in this State. The Court are of opinion that Rosseter was liable to be taxed for his turnpike shares, though in a turnpike lying within the limits of another State, and that the decision of the commissioners in this respect cannot be supported. The tax in question was the tax for 1833, and by law, the property taxable, was to be ascertained by the next preceding tax act.* The next preceding tax act was that passed in 1831, and it includ-ed in terms " all bank and insurance stock and shares or property in any incorporated company for a bridge or a turnpike road." No exception is made of companies in other States, and the Court perceive no reason for raising any by implication. It was supposed that a difference would arise from the consideration, that by the laws of New York, the turnpike company holds the land over which the road is made, in fee, so that a turnpike is real estate. If it be so, we think it can make no difference. The beneficial interest, the valuable property, consists in the franchise and right to receive tolls, and whether the right of the company in the soil of their road be technically a fee or a perpetual easement, makes no difference. So in many joint stock companies within the State ; the bulk of the property out of which the profits arise, is real estate, vested in the corporation in fee ; but the shares

Great Bar rington
*v.*
County Commis-sioners of Berkshire

*Sept.* 17th.

*May term* 1835.

---

* *St.* 1785, *c.* 50, § 9

Great Bar-
rington
*v.*
County
Commis-
sioners of
Berkshire.

are personal property and are taxed as such to the individual holders.*

*Writ of certiorari ordered.*

---

* This question is settled by the Revised Statutes, in which the property
is described as "stocks in turnpikes, bridges, and all moneyed corporations
whether within or without the State." Revised Stat. *c.* 7, ᵩ 4.